UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RONALD KRAMER, Personal Representative of the Estate of ALLYSON KRAMER, Dec.**,

    Plaintiff.

vs.

**PROMEDICA MONROE REGIONAL HOSPITAL an assumed name for MERCY MEMORIAL HOSPITAL CORPORATION, RAHMON ZUCKERMAN, D.O., and, MONROE EMERGENCY PHYSICIANS, P.C., Jointly and severally,**

    Defendants.

_____/
DRIGGERS, SCHULTZ & HERBST, P.C.
**BY:  JEFFREY S. COOK (P43999)**
Attorney for Plaintiffs
2600 W. Big Beaver Road, Suite 550
Troy, MI  48084
Telephone: (248) 458-3582
Facsimile:  (248) 649-6442
Email: JCook@DriggersSchultz.com
_____/

## COMPLAINT

NOW COMES the above named Plaintiff, Ronald Kramer, Personal Representative of the Estate of Allyson Kramer, Dec., by and through his attorneys, **DRIGGERS, SCHULTZ & HERBST, P.C.** and for his Complaint against

Defendants, PROMEDICA MONROE REGIONAL HOSPITAL, RAHMON ZUCKERMAN, D.O., and, MONROE EMERGENCY PHYSICIANS, P.C., jointly and severally, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. That at all times pertinent hereto the decedent, Allyson Kramer, age 13, resided and was domiciled in Brevard County, State of Florida, and as such was a citizen of the State of Florida.

2. That the personal representative, Ronald Kramer, was duly appointed on January 29, 2014 by the Probate Division of the Circuit Court of the Eighteenth Judicial Circuit for Brevard County, Florida.

3. That the defendant, ProMedica Monroe Regional Hospital, an assumed name for Mercy Memorial Hospital Corporation, is a Michigan Corporation and therefore deemed a citizen of the State of Michigan, and is a medical institution with its principal place of business located in the City of Monroe, County of Monroe, State of Michigan, that held itself out to the public in general, and the Plaintiff's decedent in particular, as being capable of rendering medical care and treatment within the acceptable standard of care by and through its employees, agents, and/or ostensible agents.

4. That the defendant, Rahmon Zuckerman, D.O., is a citizen of the State of Michigan who is a medical doctor licensed in the State of Michigan, board certified

2

in the specialty of Emergency Medicine, who at all times pertinent hereto was an employee of defendant Monroe Emergency Physicians, P.C., and an employee and/or ostensible agent of defendant Promedica Monroe Regional Hospital, and whose principal place of business is located in the City of Monroe, County of Monroe, State of Michigan, and who held himself out to the public in general, and your plaintiff's decedent in particular, as being capable of rendering medical care and treatment within the acceptable standard of care for a board certified Emergency Medicine specialist.

5. That the defendant, Monroe Emergency Physicians, P.C., is a Michigan professional corporation with its principal place of business located in the City of Monroe, County of Monroe, State of Michigan, and is therefore deemed a citizen of the State of Michigan, and which is vicariously liable for all acts of professional negligence committed by its employees, including, but not limited to, defendant Dr. Zuckerman.

6. That this Court has jurisdiction under 28 USC 1332(a) diversity jurisdiction and the amount in controversy exceeds SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, exclusive of interest, court costs, and attorney fees. Venue is proper in this judicial district under 28 USC 1391(b)(2) in that defendants are found in this district and a substantial part of the events or omissions giving rise to the claim occurred here.

## **FACTUAL BASIS FOR CLAIM**

7. That plaintiff's decedent, Allyson Kramer, was a 13 year old young girl who weighed approximately 95 pounds, who was in Michigan for the summer between her seventh and eighth grade middle school years visiting at her grandparent's home in Monroe County with her mother.

8. That plaintiff's decedent grew anxious about returning to Florida to begin her eighth grade studies due to a perceived bullying problem at her school.

9. That at approximately 4:00 a.m. on July 17, 2013, plaintiff's decedent, in what was diagnosed as a cry for help, ingested 25 tablets of 30 milligram MS Contin 12 hour continuous release morphine tablets that had been prescribed for her mother for pain relief due to a recent surgical procedure.

10. That after ingesting the medication plaintiff's decedent called 911 and was taken by ambulance to the emergency department of defendant Promedica Monroe Regional Hospital arriving at 6:21 a.m.

11. That upon arrival at defendant hospital plaintiff's decedent explained what she had done and the Sheriff's Department brought the pill bottle to the hospital where it was confirmed that there were 25 tablets missing from the 30 mg MS Contin prescription, which was also confirmed by her mother who had only taken the medications as prescribed for two days.

12. That defendant, Dr. Zuckerman, was assigned to Allyson's care by defendant Promedica Monroe Regional Hospital.

13. That as of 6:21 a.m. on July 17, 2013, 95 pound 13 year old minor, Allyson Kramer, was seeking the care and treatment and medical judgment of the employee and/or ostensible agent physicians and nursing staff at defendant Promedica Monroe Regional Hospital, who were aware that she had ingested, all at once, 25 tablets of 12 hour continuous release 30 mg. morphine tablets just two hours before her arrival in their emergency department.

14. That plaintiff's decedent was monitored in the emergency department by defendant Zuckerman and the medical staff at defendant Promedica Monroe Regional Hospital for a period of eight hours before being discharged home at 2:20 p.m. on July 17, 2013.

15. That plaintiff's decedent was given saline solution through an I.V. but no other medications or actions were given or taken to counteract the MS Contin in her system.

16. That plaintiff's decedent was opiate naïve and did not have a tolerance to the effects of morphine.

17. That plaintiff's decedent was discharged home by defendant Dr. Zuckerman two hours before the twenty five 12 hour continuous release morphine

5

tablets had fully dissolved and released their full lode of medication into plaintiff's decedent's system.

18. That at the time of discharge plaintiff's decedent's mother questioned this decision and was told by Dr. Zuckerman that Allyson should go home to sleep it off and would be sleepy and groggy in the morning but would be fine by the next afternoon.

19. That upon arriving home Allyson fell asleep on the couch, was awakened for dinner a few hours later, and after eating, fell back asleep and was put into her bed.

20. That early the next morning plaintiff's decedent's mother found her lifeless body in bed, called 911, and began frantically administering CPR.

21. That the same EMS crew that had transported Allyson to defendant hospital the morning before responded to the Kramer home and were horrified to find that Allyson was not in a hospital setting and had been released home.

22. That toxicology results confirmed that Allyson Kramer died from an overdose of morphine in her system that caused her to go into respiratory distress and cardiac arrest.

## **DUTY OWED TO PLAINTIFF'S DECEDENT**

23. That the defendants, each and any of them, by and through their employees, agents, and/or ostensible agents, owed the minor plaintiff's decedent a duty, but notwithstanding said duty, did breach same in the following particulars:

- A. In negligently failing to take a proper history from the patient and family members concerning the amount and type of medications ingested;
- B. In negligently failing to take a proper history from the patient and family members concerning her opiate naiveté and the timing of the consumption of all medications prior to her arrival in the emergency department;
- C. In negligently failing to appreciate the difference between instant release morphine medication and the 25 continuous release MS Contin tablets ingested by Allyson Kramer;
- D. In negligently failing to understand and appreciate the effects of simultaneously taking 25 continuous release 30 mg MS Contin tablets in a 95 pound opiate naïve patient vis-à-vis absorption rates, half-life, potency, cumulative effects, patient opiate naiveté, patient weight, and amount and timing of consumption of all medications;
- E. In negligently failing to properly utilize opiate antagonists, specifically Narcan, in the amount and duration necessary to appropriately counteract the effects of the MS Contin overdose;
- F. In negligently failing to properly utilize activated charcoal in the amount and duration necessary to counteract the effects of the MS Contin overdose;
- G. In defendant Zuckerman negligently failing to personally contact a poison control center for guidance;
- H. In negligently failing to place plaintiff's decedent on an end-tidal CO2 monitor and pulse oximetry to properly monitor the signs and symptoms of the morphine overdose and negligently failing to take the appropriate medical steps necessary to counteract the morphine which had entered her system and therefore negligently failed to prevent further morphine from being absorbed by the decedent of the extended release MS Contin medication;
- I. In negligently failing to give the appropriate orders to admit the plaintiff's decedent to an ICU and place her on a Narcan infusion and

7

      an end tidal CO2 monitor where her vital signs would have been continuously monitored and neurological examination been performed on a regular basis until the effects of the extended release morphine overdose had safely cleared her system or immediate medical action could have been taken if respiratory insufficiency or unstable vital signs should occur,

- J.   In defendant Promedica Monroe Regional Hospital being vicariously liable for all acts of professional negligence committed by its employees, agents and/or ostensible agents, including, but not limited to, defendant Dr. Zuckerman, and,
- K.   In defendant Monroe Emergency Physicians, P.C., being vicariously liable for all acts of professional negligence committed by its employees, including, but not limited to, defendant, Dr. Zuckerman.

## **DAMAGES UNDER THE MICHIGAN WRONGFUL DEATH ACT**

24. That as a direct and proximate result of the negligence of the defendants, each and any of them, by and through their employees, agents, and/or ostensible agents, which negligence caused and/or contributed to death, the Estate is claiming damages for the conscious pain and suffering of the plaintiff decedent, as well as for the medical, funeral and burial expenses, and for any and all other damages the Estate may be entitled to under the Michigan Wrongful Death Act, as amended.

25. That the decedent left surviving heirs-at-law, all of whom are claiming damages for the loss of love, care, affection, companionship and society of the decedent, together with any and all other damages the Estate may be entitled to under the Michigan Wrongful Death Act, as amended.

WHEREFORE, your Plaintiff decedent's Estate herein prays for judgment against the Defendants, jointly and severally, in an amount which is fair, just and adequate compensation for the wrongful death of plaintiff decedent, including court costs, interest, and reasonable attorney fees as well as any and all damages allowable under the Michigan Wrongful Death Act, as amended.

>Respectfully submitted,
>**DRIGGERS, SCHULTZ & HERBST**
>
>/s/ *Jeffrey S. Cook*
>By:  JEFFREY S. COOK (P-48058)
>Attorney for Plaintiff
>2600 W. Big Beaver Road, Suite 550
>Troy, MI  48084
>Telephone:  (248) 649-6000
>Facsimile:   (248) 649-6442
>Email:  JCook@DriggersSchultz.com

Dated:  October 14, 2015

## AFFIDAVIT OF MERIT

STATE OF VIRGINIA        )
                         ) SS
COUNTY OF CHESTERFIELD   )

**FRANK RAMSEY, M.D.,** first being duly sworn, deposes and says:

1. I am licensed as a medical doctor in the State of Virginia.

2. I was a board certified Emergency Physician during the year preceding, and at the time, of the malpractice of Allyson Kramer's treatment by Dr. Zuckerman, I devoted a majority of my professional time to the active clinical practice of Emergency Medicine.

3. I have reviewed the medical records supplied to me and the Notice of Intent to File Claim with respect to Allyson Kramer.

4. The standard of practice in this setting is:

A. To take a proper history from the patient and family members concerning the amount and type of medications ingested;
B. To take a proper history from the patient and family members concerning type and concentration of the opiate and timing of consumption of all medications prior to arrival in the emergency department;
C. To appreciate the difference between instant release medications and continuous release medications;
D. To understand the effects of continuous release medications vis a vis absorption rates, half-life, potency, cumulative effects, patient opiate naiveté, patient weight, and amount and timing of consumption of all medications;
E. To properly utilize opiate antagonists, specifically Narcan, in the amount and duration necessary to appropriately counteract the effects of an MS Contin overdose
F. To contact a poison control center for guidance;
G. To place the patient on a Narcan infusion, an end-tidal $CO_2$ monitor and pulse oximetry;
H. To properly monitor the signs and symptoms of a morphine overdose and take the appropriate medical steps necessary to counteract the morphine which has entered the patients system and to prevent further morphine from being absorbed by the patient in the case of an overdose of extended release medication; and,
I. To give the appropriate orders to admit the patient to a 24 hour ICU unit, place her on an end-tidal $CO_2$ monitor and pulse oximetry where the patient's neurological status and vital signs can be continuously monitored until the effects of the extended release morphine overdose has cleared her system.

1

5. It is my opinion that Dr. Zuckerman breached the standard of practice for an Emergency Medicine Physician in the following particulars:

   A. In negligently failing to take a proper history from the patient and family members concerning the amount and type of medications ingested;
   B. In negligently failing to take a proper history from the patient and family members concerning her opiate naiveté and the timing of the consumption of all medications prior to her arrival in the emergency department;
   C. In negligently failing to appreciate the difference between instant release morphine medication and the 25 continuous release MS Contin tablets ingested by Allyson Kramer;
   D. In negligently failing to understand and appreciate the effects of simultaneously taking 25 continuous release 30 mg MS Contin tablets in a 95 pound opiate naïve patient vis a vis absorption rates, half-life, potency, cumulative effects, patient opiate naiveté, patient weight, and amount and timing of consumption of all medications;
   E. In negligently failing to properly utilize opiate antagonists, specifically Narcan, in the amount and duration necessary to appropriately counteract the effects of the MS Contin overdose;
   F. In negligently failing to properly utilize activated charcoal in the amount and duration necessary to counteract the effects of the MS Contin overdose;
   G. In negligently failing to contact a poison control center for guidance;
   H. In negligently failing to place the patient on an end-tidal CO2 monitor and pulse oximetry to properly monitor the signs and symptoms of the morphine overdose and negligently failing to take the appropriate medical steps necessary to counteract the morphine which had entered the patients system and therefore negligently failed to prevent further morphine from being absorbed by the decedent of the extended release MS Contin medication; and,
   I. In negligently failing to give the appropriate orders to admit the Claimant's decedent to an ICU and place her on a Narcan infusion and an end tital CO2 monitor where her vital signs would have been continuously monitored and neurological examination be performed on a regular basis until the effects of the extended release morphine overdose had safely cleared her system or immediate medical action could have been taken if respiratory insufficiency or unstable vital signs should occur.

6. It is my opinion that in order to comply with the acceptable standard of care, Dr. Zuckerman should have done the following:

   A. He should have taken a proper history from Allyson Kramer concerning the amount of the medications she consumed and should have taken a proper history from Rhonda Kramer as to the medication she had been prescribed along with an examination of the pill bottle brought to the emergency department by the Sheriff's

2

|     | |
| --- | --- |
|     | Department which would have confirmed that Allyson had taken/ingested twenty five 30 mg extended release MS Contin morphine tablets; |
| B.  | He should have taken a proper history from Allyson and Rhonda Kramer concerning both Allyson's opiate naiveté and the timing of the consumption of all medications taken by her prior to her arrival in the emergency department; |
| C.  | He should have appreciated the difference between instant release medications and continuous release medications as to their potency, cumulative effect, and timing of the release of the medication from each of the 25 tablets; |
| D.  | He should have understood the effects of simultaneously ingesting 25 continuous release MS Contins vis-à-vis absorption rates, half-life, potency, cumulative effects, patient opiate naiveté, patient weight, amount of morphine being released and absorbed on an hourly basis over time, and amount and timing of the consumption of all medications to determine the maximum exposure timing of the effects of the narcotic; |
| E.  | He should have utilized opiate antagonists, specifically Narcan, in the amount and duration necessary to appropriately counteract the effects of the MS Contin overdose which would have included placing the patient on an end-tidal CO2 monitor, pulse oximetry and starting a Narcan infusion, adjusting the infusion rate as necessary over time as the effects of the continuous release morphine continued to dissolve and were being absorbed into Claimant's decedents system; |
| F.  | He should have used activated charcoal in the amount and duration necessary to counteract the effects of the MS Contin overdose in light of the continuing nature of the overdose exposure over a 12 hour period of time as each of the 25 MS Contin tablets would have dissolved at the same continuous release rate and simultaneously were releasing 25 additional doses of morphine hour after hour until all were fully dissolved; |
| G.  | He should have contacted a poison control center for guidance; |
| H.  | He should have properly monitored the Claimant's decedent for signs and symptoms of a morphine overdose and should have taken the appropriate medical steps necessary to counteract the morphine which had already entered her system and should have taken the appropriate medical steps necessary to have prevented further time release morphine from dissolving and being absorbed by the Claimant's decedent prior to her accumulating a fatal overdose of morphine in her system; |
| I.  | He should have given the appropriate orders to admit the Claimant's decedent to a an ICU unit where her vital signs could be continuously monitored until the effects of the extended release morphine overdose had cleared her system especially in light of his failure to give her Narcan or take any steps to eliminate the still dissolving extended release morphine in her system prior to all 25 tablets fully dissolving and releasing their full lode of medication; and, |
| J.  | He should not have discharged from the hospital setting the 95 pound 13 year old Claimant's decedent only 10 hours after she ingested the 12 hour time release morphine tablets as at the time of discharge the full effects of the medication had not yet occurred and the amount she had taken, 750 mgs of MS Contin, was well above the fatal dosage warning amount for a full grown adult; especially in light of the fact that Claimant's decedent was opiate naïve and no counter measures had |

3

been taken to reduce the effect of the morphine upon her system while she was in the emergency department, and Dr. Zuckerman knew, or should have known, that once the full and cumulative effects of this excessive amount of morphine was in her system that without medical treatment she would suffer respiratory failure, respiratory arrest which would lead to hypoxia and cardiac arrest.

7. In my opinion the negligent failure of Dr. Zuckerman and the medical staff at Promedica Monroe Regional Hospital to either order medication to counteract the effects of the morphine overdose or take steps to remove the undissolved continuous release medications from Allyson Kramer's system prior to their absorption, proximately resulted in all the morphine contained in all 25 MS Contin tablets dissolving over time and being absorbed into Allyson's system. The negligent failure of Dr. Zuckerman and the medical staff at Promedica Monroe Regional Hospital to appreciate that the full effects of the morphine overdose would not reach their maximum potency until 12 to 24 hours after the 4:00 AM ingestion of the MS Contin tablets proximately resulted in the negligent decision to prematurely discharge Allyson to her home only 10 hours after ingesting the medication.

The negligent decision to prematurely discharge Allyson Kramer to her home proximately resulted in her not being monitored in a hospital setting during the time frame that the maximum effects of the morphine overdose was effecting her vital organs. The negligent assurances to Allyson and her mother, Rhonda Kramer, that Allyson would be sleepy and groggy, but would be perfectly fine the next day, proximately resulted in a false sense of security and did not give accurate discharge information concerning the signs and symptoms of an ongoing morphine overdose that would require a return to the emergency department.

The negligent decision to discharge Allyson Kramer from the monitored hospital setting, without providing any medical treatment, only 10 hours after ingesting twenty five 30 mg extended release MS Contin tablets proximately resulted in her being at home and off of any monitoring

devices when the full effect of the morphine overdose struck her system. As a result of the full effect of the morphine in her system she went into a deep sleep and became comatose which then developed into respiratory failure as her breathing slowed to a critical point, which then led to respiratory arrest, hypoxia followed by cardiac arrest, and death from morphine intoxication less than 24 hours after ingesting the continuous release medication.

8.  I reserve my final opinions in this matter until further discovery has been performed.

FRANK RAMSEY, M.D.

Subscribed and sworn to before me
this 24th day of Sept., 2015

Debbie Woolard Bacile
Notary Public

Chesterfield County, Richmond VA
My Commission Expires: 11/30/2016
# 7516355

5